In the Matter of FRANK C. MOORE, as Comptroller of the State of New York, on Behalf of the New York State Employees' Retirement System, Appellant, against BOARD OF EDUCATION, UNION FREE SCHOOL DISTRICT No. 1, OF THE TOWN AND CITY OF CANANDAIGUA, et al., Respondents.

Fourth Department, November 17, 1948.

*Nathaniel L. Goldstein, Attorney-General, (Wendell P. Brown, Solicitor-General, Douglas S. Rider* and *Edward L. Ryan,* Assistant Attorneys-General, of counsel), appellant.

*Frederic T. Henry* for respondents.

LOVE, J. The appeal is from an order granted at Special Term in a proceeding brought by the Comptroller of the State of New York, on behalf of the New York State Employees' Retirement System for an order compelling the Board of Education, Union Free School District No. 1, of the Town and City of Canandaigua, N. Y., to make contribution to the New York State Employees' Retirement System, for the fiscal years ending June 30, 1943 and June 30, 1944, respectively, which order dismissed the petition in part.

On the return of the petition counsel stipulated facts as constituting the proof and made no other proof.

As a participating organization in the system, respondent contributed $1,110.69 to the Pension Accumulation Fund for its normal, deficiency and administrative contribution for the year ending June 30, 1943.

It is petitioner's claim that the further sum of $195.41 is needed to complete payment of contributions due on that date.

As such contributions for the year ending June 30, 1944, petitioner claims the amount needed is $1,718.79.

Respondent tendered $1,412.01 in payment thereof. Petitioner declined the tender.

Petitioner certified the amounts due for each of those fiscal years, based upon the salaries of employees of respondent, which included certain amounts for members who had worked during periods less than the full fiscal payroll period and also certain amounts for those members who left the employ of respondent prior to the above-mentioned fiscal periods but who were out of employment not exceeding five years and who had not withdrawn their contributions from the system.

He applied the rates for the employer's contribution to the amounts such members would have been paid if they had been continuously employed throughout the two fiscal years.

It is the inclusion of such employees in the computations made by petitioner which gives rise to the question here and which accounts for the amounts on which petitioner bases his demands above the amounts on which the respondent has contributed for 1943 and offered to contribute for 1944.

Respondent contends that the rates of employer contribution should have been applied to the amounts actually paid out by it to employees who gave actual service and that it may not be ordered to make any further contribution than the one made for 1943 and the one tendered in 1944.

The Special Term held with respondent, denied petitioner's application and dismissed his petition, except that it ordered respondent to pay to petitioner the sum of $1,412.01, without interest, as and for its normal and deficiency contributions to the pension accumulation fund and its administration contribution for the fiscal year ending June 30, 1944.

Decision in this matter entails an interpretation of provisions of article 4 of the Civil Service Law (L. 1920, ch. 741, as amd.) and article 5 thereof (L. 1922, ch. 591, as amd.).

Article 4 provides for retirement of officers and employees in the State civil service and article 5 for retirement of officers and employees in the county, city, town and village service.

Section 78 of article 5 provides that the actuary of the retirement system shall compute the rates of contribution payable by members who are employees of a participating organization (that is, of a county, city, town or village, whose local legislative body shall have approved membership of the municipality in the system), and shall compute the contributions payable annually by the State on behalf of such members as though they were State employees.

Contributions so computed shall be certified by the comptroller to the chief fiscal officer of each participating organization.

Thus article 4 is applicable to respondent and its employees, as members of the system, just as though we were dealing with the State and State employees.

The retirement system was established, including the several funds created and placed under the management of the comptroller by this article, for the payment of retirement allowances and other benefits under the provisions of article 4.

The status of those employees who must, and those who may, become members appears in section 52.

The administrative head of the system is the Comptroller of the State of New York, who shall from time to time establish rules and regulations for the administration of the system.

He shall engage the services of an actuary and other necessary assistance, maintain and keep data necessary for the actuarial valuation of the various funds created by the article.

The actuary shall, immediately after his appointment, make such investigation of the mortality, service and compensation experience of the employees of the various groups of employees mentioned in subdivision 4 of section 52.

On the basis of such investigation and on the recommendation of the actuary, the comptroller shall (a) adopt for the system, such mortality, service and other tables as shall be deemed necessary; (b) certify the rates of deduction from compensation computed to be necessary to pay the annuities authorized by the article; (c) certify the rates of contribution, expressed as proportions of compensation of members which shall be made by the State of New York to the pension accumulation fund, as provided by the article. On the basis of such tables as the comptroller shall adopt, the actuary, as soon as practicable, shall make a valuation of the assets and liabilities of the funds created by the article.

Beginning with the year following the creation of the system and in every five-year period thereafter, he shall make an

actuarial investigation into the mortality, service and compensation experience of the members and beneficiaries and a valuation of the assets and liabilities of the various funds. Upon the basis of such investigation and valuation he shall adopt such tables and certify such rates as are required in paragraphs (a), (b) and (c) of subdivision 2 of section 54 of the Civil Service Law.

Four funds are created. (Civil Service Law, § 58.) The Pension Accumulation Fund with which we are here concerned, is the one in which shall be accumulated all reserves for the payment of all pensions and other benefits payable from contributions made by the State of New York or participating organizations and from which such pensions and other benefits shall be paid to or on account of beneficiaries credited with prior service and from which all lump sum benefits provided by the State on account of death in active service shall be paid.

Contributions to and payments from this particular fund shall be made as follows: (§ 58, subd. 3)

" (a) On account of each member there shall be paid annually into the pension accumulation fund by the state of New York for the preceding fiscal year a certain percentage of his earnable compensation to be known as the ' normal contribution,' and an additional percentage of his earnable compensation to be known as the ' deficiency contribution.' The rates per centum of such contributions shall be fixed on the basis of the liabilities of the retirement system as shown by the actuarial valuations. * * *

"(b) On the basis of regular interest and of such mortality and other tables as shall be adopted by the comptroller, the actuary engaged by him to make each valuation required by this article during the period over which the deficiency contribution is payable, immediately after making such valuation, shall determine the uniform and constant percentage of the earnable compensation of the average new entrant, which if contributed on the basis of his compensation throughout his entire period of active service would be sufficient to provide at the time of his retirement or death the total amount of the reserve on any pension or other benefit payable on his account. The rate per centum so determined shall be known as the ' normal contribution ' rate. After the deficiency contribution has ceased to be payable, the normal contribution shall be the rate per centum of the earnable salary of all contributors obtained by deducting from the total liabilities of the pension accumulation fund the amount of the funds in hand to the

credit of that fund and dividing the remainder by one per centum of the present value of the prospective future salaries of all contributors as computed on the basis of the mortality and service tables adopted by the comptroller and on the basis of regular interest. The normal rate of contribution shall be determined by the actuary after each valuation and shall continue in force until a new valuation and certification.

" (c) Immediately succeeding the first valuation, the actuary engaged by the comptroller shall compute the rate per centum of the total compensation of all members during the preceding fiscal year which is equivalent to four per centum of the amount of the total liability of the state on account of all members and beneficiaries not dischargeable by the aforesaid normal contribution made on account of such members during the remainder of their active service. The rate per centum originally so determined shall be known as the ' deficiency contribution rate.'

" (d) The total amount payable in each year into the pension accumulation fund shall be not less than the sum of the rates per centum known as the normal contributions rate and the deficiency contribution rate of the total compensation earnable by all members during the preceding fiscal year; the amount of each annual deficiency contribution shall be at least three per centum greater than the preceding annual payment. The aggregate payment by the state into the pension accumulation fund shall be sufficient, when combined with the amount in the fund to provide the pensions and death benefits payable out of the fund during the year then current.

" (e) The deficiency contribution shall be discontinued as soon as the accumulated reserve in the pension accumulation fund shall equal the present value, as actuarially conmputed and approved by the comptroller, of the total liability of such fund less the present value, computed on the basis of the normal contribution rate then in force, of the normal contributions to be received on account of persons who are at that time members.

" (f) All pensions with the exception of those payable on account of members who received no prior service allowance shall be paid from the pension accumulation fund. * * *

" h. All expenses of the retirement system, together with the necessary expenses of the commission on pensions, shall be paid from the pension accumulation fund which shall be reimbursed as provided in sections sixty and seventy-eight of this chapter.''

The guaranty of the State of New York as to all benefits granted under the provisions of article 4 is, "Regular interest charges payable, the creation and maintenance of reserves in the pension accumulation fund and the maintenance of annuity reserves and pension reserves as provided for and the payment of all pensions, annuities, retirement allowances, refunds and any other benefits granted under the provision of this article and the expenses of the retirement system together with the necessary expenses of the commission on pensions are hereby made obligations of the state of New York and the participating organizations. All income, interest and dividends derived from deposits and investments authorized by this article shall be used for the payment of the said obligations of the state of New York and the participating organizations." (§ 59.)

In addition thereto is the constitutional amendment of 1938, article 5, section 7. "*Membership in retirement systems; benefits not to be diminished or impaired.* After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired."

Upon the basis of each actuarial determination and appraisal provided for in the article the comptroller shall annually prepare an itemized statement of the amounts necessary to be appropriated by the State of New York to the various funds to provide for the *past fiscal year* of all such obligations of the State including the proportion of the accumulative expense together with the necessary expenses of the commission on pensions which the payroll of members employed by the State bears to the payroll of all members.

It is provided that the chief fiscal officer of a participating organization shall submit to the comptroller such information and shall cause to be performed in respect to each of the employees of the participating organization as would be performed in the State service by the head of a department of the State employing members of the retirement system. (§ 77.)

Employees of the participating organization whose contributions are paid in accordance with the requirements of section 78 shall be entitled to benefits under The New York State Employees' Retirement System as though they were State employees. (§ 79.)

Our construction must be made, with consideration for the overall purpose and scope of the law, the rights of former employees who remain members of the system, to benefits

beyond the one of superannuation retirement payable from the Pension Accumulation Fund, the guaranties of the Constitution and the statute and the responsibility and obligation of the respondent growing out of its participation in the system.

Interpretation of words, sentences and phrases contained in a statute must not be made without reference to the scheme of the whole. (*Matter of General Reinsurance Corp.* v. *Pink,* 269 N. Y. 347; *Caddy* v. *Interborough Rapid Transit Co.,* 195 N. Y. 415.)

The conclusion reached as to meanings must be from the language of the *act as chosen and used by the Legislature* in connection with relevant facts *relating to the purpose* sought to be accomplished by it, (*Wiley* v. *Solvay Process Co.,* 215 N. Y. 584) and where the general purpose of the Legislature is apparent from the language of the act, it should be given play, even though the literal and technical meaning of the statute would seem to imply otherwise. (*Surace* v. *Danna,* 248 N. Y. 18.)

The provisions of a statute must always be read in the light of its history, and of its purpose. (*Matter of Frasch,* 245 N. Y. 174.)

" The policy which dictated the enactment of a statute which both defines and limits the rights which the appellant now asserts, is a matter solely for the Legislature. No power is granted to the courts by interpretation to vary the clear and positive mandate of the statute. Mindful of our duty to construe the statute liberally, we must not be unmindful of the rule that ' freedom to construe is not freedom to amend.' " (*Matter of O'Brien* v. *Tremaine,* 285 N. Y. 233, 238; citing *Sexauer & Lemke* v. *Burke & Sons Co.,* 228 N. Y. 341, 345.)

In this case it seems to us, the purpose of the statute is clearly to provide an actuarially sound system giving retirement rights and other benefits to members. Those rights and benefits are contractual obligations of the State and participating organizations by constitution and statute. (N. Y. Const., art. V, § 7; Civil Service Law, § 59.)

The statute is beneficent in scope.

The numerous " other benefits " are set forth in the statute.

Among them is the right to retain membership for a period of not to exceed five years, while unemployed and having previously made contributions in the system and its fund, which are left in the fund.

That benefit, alone, imposes a liability, to meet which the system must require contributions to the Pension Accumulation

Fund from the participating organizations to meet the requirements of the statute and maintain sound actuarial practices.

Still other benefits retained to an ex-employee, retaining his membership and obviously not then making contributions from his compensation, which benefits are seven in number, are found in the statute at sections 53, 58, 59, 61, 62, 65 and 78.

To provide for them the system actuarially determines the liability of the participating organizations to the Pension Accumulation Fund.

The comptroller is required, *upon the basis of the investigation and valuation made by the actuary* to adopt experience tables and to certify the rates of deduction from compensation necessary to pay annuities and to certify rates of contribution, expressed as proportions of compensations of members which shall be made by the State and participating organizations.   (§§ 54, 78.)

Any actuarial determination is necessarily based upon averages of the number of persons who may be expected to die, retire, withdraw, receive increase in salary, or remain members while unemployed.

From all of it, and by use of mathematical processes used by actuaries whose computations form the basis of rates for life insurance and annuities contracted for by life insurance companies, the system's future liabilities are determined.

Further, the statute requires the system to make a valuation of its liabilities each year, based on actual membership, whether employed or not and the " earnable compensation " of the members.   Thereby the system's total liability is determined and whatever requirement there then is, over the on-hand accumulations, must be collected from the participating organizations in the future.

When the needed amount is determined, the current year's required contribution is prorated among the participating organizations.

A participating organization's contribution to the fund in question, shall consist of a normal contribution, a deficiency contribution and an administrative one.

The normal one is for the purpose of liquidating future liability which exists on account of member service, the deficiency one for liquidation of liability on account of service rendered prior to the date when membership could have started and the administrative one for the purpose of reimbursing the system for expenses during the preceding year.

Here our sole question is whether the petitioner in computing contributions due from participating organizations to the Pension Accumulation Fund, based on percentages of the earnable compensation of members, may include (1) former employees who have not withdrawn their contributions to the retirement system within a period of five years after severance of their employment, and (2) a full year's salary computed at the salary rate shown on the last payroll period of the respective fiscal years, for those employees who had been employed during only a portion of the fiscal years in question.

No question is raised by respondent as to any action of the comptroller.

It does contend that, "If the actuary fixes the rate of contribution in accordance with Section 58, Subdivision 3 (b) and (c) of the Civil Service Law, payment at the rate so fixed throughout active service of members will provide ' the total amount of the reserve on any pension or *other benefit payable* on his account.' "

That view can not be adopted from either the law or possible practical action.

No authority is cited and there is no enlargement of the statement in respondent's brief save this, " In other words, if the actuary fixes the rate in accordance with the law, all of the benefits mentioned in Point I of appellant's brief will be paid for by contributions made throughout the ' period of active service ' of each member and no payment is required on account of members who are not employed."

Reading the entire statute and keeping in mind its purpose and scope it must be said not only that the latter statement is not in accordance with the law, but also that accomplishment of such rate fixing as it proposes is utterly incapable of being brought about.

There is no way that an actuary could foresee the various possible contingencies, estimate the length of existence in time, of any of them concerned with those who remain members, while unemployed, or as to re-entrants or other members or beneficiaries to whom the statute and constitution guarantee consideration.

Respondent's contention based on statements in the Special Term's decision, that rate fixing done, and payment as demanded, by petition would be unfair and inequitable, is untenable.

This statute provides a system, based upon actuarial procedures, put into effect on the basis of the actuary's findings by the comptroller, with actuarial reinvestigations each five

years, a valuation of liabilities and assets each year, the fixing of rates applicable to the State of New York, a large number of participating organizations and a vast number of members, employed and unemployed, each year, upon the actuarial basis of averages, than which no fairer system could be devised.

Any temporary conditions such as this case presents, could appear in none, few or many participating organizations over the years. The resultant higher total of " earnable compensation " and higher contribution for a given year in the case of any participating organization would be slight compared to those items if one were to attempt to fix rates and contributions of members, while in active service, blindly trying to foresee possible future situations and to make sufficient allowances to cover any possible need for providing the benefits of the statute.

As time goes on, the method provided by statute evens out any temporary, seeming imbalances.

Respondent, on its brief does not mention, save by reference to the Special Term's decision, the point upon which the decision largely turned — to wit: the use, in the statute, of the words " earnable compensation ".

The issue is squarely between the view that the term means the amount capable of being earned by the member, unemployed, if he had worked for the same compensation as he received in the last previous year, when employed, taken by petitioner, and the view, taken by respondent, that an unemployed member's earnable compensation in a year in which he did not work was nil.

The fallacy of the latter view is that the statute carefully speaks of " earnable compensation ", not of compensation " earned " or " paid " which it would have done if that was what it meant.

Further, it used the words, " *annual* earnable compensation ".

" Earnable " definitely means possible of being earned.

It involves futurity and was so used in presently fixing prospective rights and certifying contributions with which to meet them.

Respondent claims the " payroll " mentioned in the statute is the ordinary payroll of commerce, showing the names of employees and the amounts of money actually paid each one.

That that is not so is seen by reading the definition of " payroll " as given by the statute. (§ 50, subd. 22.)

" *Payroll when used in article four or five of this chapter* as a basis for determination of the amount to be contributed by the state or a participating organization to any fund of the

retirement system shall mean *annual compensation earnable by members employed* by the state or by a participating organization.'' (Italics supplied.) (§ 50, subd. 22.)

Earnable compensation is but one of the several bases upon which the actuarial soundness of the system stands and the record in this case presents no ground for disturbing the actuary's determination.

The appellant, through his own acts or the acts of his actuary has not been shown to have failed to perform a duty enjoined upon him by law nor to have performed such a duty improperly.

The order appealed from should be reversed on the law without costs of this appeal to any party and the relief demanded by the petitioner granted.

All concur. Present — TAYLOR, P. J., McCURN, LARKIN, LOVE and VAUGHAN, JJ.

Order reversed on the law, without costs of this appeal to any party and final order entered granting petitioner's application.