OAKES, Circuit Judge:
This appeal raises the question whether pension beneficiaries may require their pension systems to transfer a portion of their monthly benefits for distribution to creditors under Chapter 13 of the new Bankruptcy Code.[1] Chapter 13 allows individuals with a “regular income”[2] to avoid straight bankruptcy by making payments to creditors under a voluntary, court approved plan. In this case, three retired New York State employees wish to fund Chapter 13 plans with a portion of their monthly pension benefits. The Bankruptcy Court for the Northern District of New York confirmed these plans and issued income deduction *83 orders to the systems in question.[3] The systems appealed, arguing that an anti-assignment provision in the pension statute removed the benefits from the operation of Chapter 13. The United States District Court for the Northern District of New York, Roger J. Miner, Judge, affirmed the bankruptcy court. The funds have been transferred to the standing Chapter 13 trustee who holds them in escrow pending determination of this appeal.
We agree with the district court’s conclusion that the state law prohibition against assignment to creditors, N.Y. Retire. & Soc. Sec. Law § 110 (McKinney 1971), does not prevent pension benefits from being property of the estate in a Chapter 13 proceeding. We also agree that 11 U.S.C. § 541(c)(2), which preserves some transfer restrictions “enforceable under applicable nonbankruptcy law,” was not intended to bar the use of such benefits in a voluntary repayment plan confirmed under Chapter 13. Accordingly, we affirm and in so doing state that, in our view, the use of pension benefits to fund payments under a Chapter 13 plan does not disqualify the state retirement systems under I.R.C. § 401(a)(13).[4]

DISCUSSION

Non-assignability under New York Law

It is true that N.Y. Retire. & Soc. Sec. Law § 110(2), (3) (McKinney 1971) provides that state pension benefits “[sjhall not be subject to execution, garnishment, attachment or any other process whatsoever” and that such benefits “[sjhall be unassignable .... ” The retirement systems argue from this to the conclusion that these benefits may not be used by retirees to fund a Chapter 13 repayment plan. This conclusion depends on whether pension benefits become part of the debtor’s estate under the Code generally or Chapter 13 specifically.[5] We believe that Judge Miner was quite correct in holding that the benefits were estate property under the new Bankruptcy Code. As such, they were subject to the income deduction orders issued here.
The Code broadly defines “all legal or equitable interests of the debtor in property,” 11 U.S.C. § 541(a)(1), as property of the debtor’s estate in bankruptcy “notwithstanding any provision ... that restricts or conditions transfer of such interest by the debtor.” Id. § 541(c)(1)(A). This “substantial departure . .. from the extensive reliance of the [former Act] on nonbankruptcy law ... to determine what property will come into the estate”[6] reflects a congressional intent to “include[j as property of the estate all property of the debtor, even that needed for a fresh start.” S.Rep.No. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5868. The existence of a legal or equitable interest may often turn on non-bankruptcy law,[7] *84 but once it is determined that such an interest exists, it becomes part of the debtor’s estate by operation of law under § 541 of the new Bankruptcy Code. Chapter 13 expressly incorporates § 541 and, in addition, defines as property of the estate all benefits received throughout the pendency of a Chapter 13 case.[8] See In re Dawson, 13 B.R. 107, 109 (Bkrtcy.M.D.Ala.1981) (state disability benefits part of Chapter 13 debt- or’s estate); In re Howell, 4 B.R. 102, 106 (Bkrtcy.M.D.Tenn.1980) (payments under Federal Employees’ Compensation Act); In re Buren, 6 B.R. 744, 746-47 (Bkrtcy.M.D.Tenn.1980) (payments under Social Security Act).
The systems do not dispute that the retirees in this case have a legal or equitable interest in their pension benefits,[9] and this is the crucial determinant of what constitutes property of the estate under the Code. Whether this interest is treated as fully vested at the time of filing or as a series of entitlements that accrue throughout the duration of the Chapter 13 payment plan is immaterial for present purposes. The Code anticipates both of these contingencies and captures the benefits in each case for the debtor’s estate. As property of the estate, the benefits may be used by the debtor, through the trustee, to pay claims under a Chapter 13 plan. The income deduction procedure at issue in this case is but a specific example of the bankruptcy court’s authority to issue whatever orders are “necessary or appropriate”[10] to implement the Code. Under Chapter 13, the “future income of the debtor” is subject to such “supervision and control of the trustee as is necessary for the execution of the [repayment] plan.” 11 U.S.C. § 1322(a)(1). Income deduction orders may therefore be issued by the bankruptcy court to “any entity from whom the debtor receives income.” Id. § 1325(b).[11]

Section 541(c)(2) Exception

The retirement systems nevertheless argue that the anti-assignment provision’s operation is saved by dint of 11 U.S.C. § 541(c)(2), which provides that “[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law” is enforceable in bankruptcy proceedings. We must reject the systems’ argument, however, because it would produce a result that runs counter to congressional intent as evinced by both specific legislative history and reasonable inferences drawn from other Code provisions.
*85 The legislative history of the new Code indicates that Congress intended to extend Chapter 13 relief to precisely the class of debtors involved in this case. In enacting the new Bankruptcy Code, Congress explicitly expanded the coverage of Chapter 13 to include pension and welfare recipients in addition to wage earners, who alone were covered under the old Act. See H.R.Rep.No.595, 95th Cong., 2d Sess. 312, reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6269 (Chapter 13 relief under new Code available to all individuals with income “sufficiently stable and regular” to enable them to make payments; individuals “on welfare, social security, [or] fixed pension incomes . .. will be able to work out repayment plans with their creditors rather than being forced into straight bankruptcy.”) See also S.Rep.No.989, 95th Cong., 2d Sess. 24, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5810 (same). Thus “[t]he clear purpose and intent of Congress was that social welfare recipients should not be denied the benefits of Chapter 13 plans.” In re Buren, 6 B.R. at 746. The systems’ construction of § 541(c)(2) would result in denial of Chapter 13 relief to one of the very classes that Congress sought to benefit in enacting the new Code.[12]
In contrast to this unambiguous legislative history indicating that Congress intended pension benefits to be used in Chapter 13 plans, the legislative history pertaining to § 541(c)(2) refers only to spendthrift trusts. See H.R.Rep.No.595, 95th Cong., 2d Sess. 369, reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6325 (“Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law”); see also S.Rep.No.989, 95th Cong., 2d Sess. 83, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5869. The systems seize upon that and argue that the pension funds are “spendthrift”[13] in form and therefore qualify as exempt under § 541(c)(2). We reject this argument for several reasons.
First, as noted earlier, 11 U.S.C. § 1325(b) expressly provides that a bankruptcy court “may order any entity from whom the debtor receives income” to pay that income to the trustee under a confirmed plan. There is no question that Congress contemplated a notion of income broad enough to encompass pension benefits. Accordingly, any doubt regarding the scope of the § 541(c)(2) exception or its applicability in Chapter 13 cases must be resolved in a manner consonant with both legislative history and explicit statutory language directing that all forms of income — and pension income specifically— may be used in a Chapter 13 repayment plan.
Second, we note that it is far from clear that the anti-assignment provision commands the respect under state law that the systems would have us grant it here. It has been held, for example, that this provision cannot shield a system from family support orders issued by New York courts. See Cogollos v. Cogollos, 402 N.Y.S.2d 929, 93 Misc.2d 406 (Sup.Ct.1978). The systems attempt to discount this line of precedent by arguing that the anti-assignment provision is enforced in all cases where it would not be “inequitable” to do so. We cannot believe that the New York courts would view as “equitable” an interpretation of this provision that would deny pensioners an oppor *86 tunity to regain their solvency with what might be the only resource at their disposal. To the extent that the provision’s operation is subject to such exception under state law, the systems’ contention that the provision must be granted automatic exemption under § 541(c)(2) is directly undercut.
Finally, whether or not the pension funds here can fairly be characterized as “spendthrift” in form,[14] whatever concerns the systems have in connection with the pensioners’ support are more than adequately addressed under Chapter 13. Every Chapter 13 plan is subject to judicial review for “good faith” and “feasibility” as a condition of confirmation, see 11 U.S.C. § 1325(a)(3) (good faith); S.Rep.No.989, 95th Cong., 2d Sess. 142, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5928 (feasibility). Plans that fail to provide a “cushion” sufficient to meet minimum expenses are routinely denied. See, e.g., In re Belka, 13 B.R. 607, 610 (Bkrtcy.W.D.Mich.1981) (proposed plan allowing nine dollars uncommitted income for family of ten not feasible); In re Barnes, 5 B.R. 376 (Bkrtcy.D.D.C.1980) (proposed plan failing to take account of food and fuel costs and inflation not feasible). The interests the systems invoke in support of a “spendthrift” argument may nevertheless be fully protected under Chapter 13. The systems’ view of § 541(c)(2) would have Chapter 13 relief turn on how a pension fund might be styled under state law or vague common law concepts. This could net the pensioners nothing, at the expense of Chapter 13 relief that Congress intended that they should enjoy.
An inference drawn from the Code itself confirms that § 541(c)(2) was not intended to prevent pension funds from becoming property of the debtor’s estate. Under 11 U.S.C. § 522(d)(10)(E), a debtor may exempt from estate property “a payment under a ... pension ... plan or contract on account of illness, disability, death, age, or length of service .... ” An exemption for pension benefits, to be exercised at the election of the debtor, would be surplus-age if the benefits were not meant to be property of the estate.[15] Here, of course, the debtors did not seek any exemption, but rather proposed inclusion of the pension benefits in their voluntary Chapter 13 plans. Thus we hold 11 U.S.C. § 541(c)(2) inapplicable.

Section 401 Disqualification

The Retirement Systems are qualified under I.R.C. § 401 and consequently receive certain tax benefits. They argue that the bankruptcy court’s income deduction amounts to an assignment of benefits in violation of I.R.C. § 401(a)(13), thus conflicting with the Code and subjecting the New York plans to possible loss of tax benefits. Surely, it is argued, the prohibition against assignment or alienation in the Internal Revenue Code, specifically made so as to insure that the employees’ accrued benefits are actually available for retirement purposes, H.R.Rep.No.807, 93d Cong. *87 2d Sess. 28, 68-69, reprinted in 1974 U.S. Code Cong. & Ad.News 4670, 4695, 4734, prohibits assignment to a Chapter 13 trustee.
The systems refer us to a private letter ruling issued by the Internal Revenue Service, Private Rul. 81-31020 (May 5,1981) to the effect that a Chapter 13 income deduction order will, if honored, result in disqualification under § 401(a)(13). We sympathize with the systems’ apparent plight; poised between the Scylla of tax disqualification and the Charybdis of bankruptcy court contempt, they seek only a safe passage through this statutory strait. We believe, however, that to the extent that Congress evidenced clear intent to include pension benefits in the property of a Chapter 13 estate — a matter which we believe is demonstrated above — it necessarily amended § 401(a)(13) and applicable Treasury regulations accordingly. See Burén, 6 B.R. at 747-48 (42 U.S.C. § 407, restricting assignment of social security benefits, repealed to the extent it conflicts with new Bankruptcy Code); Howell, 4 B.R. at 107 (“To hold that recipients of benefits under [federal statutes with anti-assignment provisions] are denied eligibility as Chapter 13 debtors is unthinkable.”).
In so holding we are mindful that the “strong judicial policy disfavoring the inference that a statute has been repealed sub siientio by subsequent legislation,” United States v. Shareef, 634 F.2d 679, 680 (2d Cir. 1980), applies with equal force to claims of implied amendment, St. Martin Evangelical Lutheran Church v. South Dakota, 451 U.S. 772, 787-88, 101 S.Ct. 2142, 2150-2151, 68 L.Ed.2d 612 (1981). In this case, of course, § 401 does not necessarily “irreconcilably conflict” with our interpretation of the Bankruptcy Code. Congress could conceivably have intended that § 401 qualification turn on the happenstance of a pensioner’s filing under Chapter 13. But we must presume that Congress was aware of § 401 in formulating Chapter 13, Cannon v. University of Chicago, 441 U.S. 677, 696-98, 99 S.Ct. 1946, 1957-1958, 60 L.Ed.2d 560 (1979), and we cannot believe that it intended to exact § 401 disqualification as the price of exercising Chapter 13 rights. This conclusion is reinforced by 11 U.S.C. § 522(d)(10)(E)(ii), (iii), which limits the applicability of the pension plan exemption available to debtors to those funds qualified under, inter alia, § 401. This section makes it clear that Congress did not believe that plans were disqualified under § 401 because their benefits became part of the debtor’s estate. It seems equally clear that Congress could not have intended that § 401 qualification would hinge on whether a single debtor declined to exercise this elective exemption or used pension benefits under a Chapter 13 plan. Thus, although we are not bound by the letter ruling cited in the systems’ brief,[16] we disagree with the position taken by the Service therein.
Judgment affirmed.

. Bankruptcy Reform Act, Pub.L.No.95-598, 92 Stat. 2549 (1978).

. 11 U.S.C. § 101(24) (Supp. IV 1980) functionally defines an “individual with regular income” as any “individual whose income is sufficiently stable and regular ... to make payments under a plan under chapter 13.”

. Two of the debtors receive benefits from the New York Policemen’s & Firemen’s Retirement System and the third receives benefits from the New York State Employees’ Retirement System.

. 26 U.S.C. § 401(a)(13) (1976). In order to qualify under § 401, a pension fund must “provide! 1 that benefits provided ... may not be assigned or alienated.”

. One of the primary purposes of federal bankruptcy law “is to give debtors ‘a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.’ ” Perez v. Campbell, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710-1711, 29 L.Ed.2d 233 (1971) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). To accomplish this objective in a manner consistent with the equitable treatment of creditors, “the general rule is that the bankruptcy trustee takes title to all the property of the bankrupt.” 4A Collier on Bankruptcy ¶ 70.07[1], at 82 (14th ed. 1978). State law that “conflicts with a mandate of the Bankruptcy Act ... is invalid under the Supremacy Clause of the Constitution.” Schmitt v. Lumbard, 470 F.Supp. 869, 873 (S.D.N.Y.1977) (citations omitted) (affirming turnover order entered against state for funds seized from bankrupt corporation).

. 4 Collier on Bankruptcy ¶ 541.02[1], at 541-10 (15th ed. 1980).

. See Board of Trade of Chicago v. Johnson, 264 U.S. 1, 10, 44 S.Ct. 232, 234, 68 L.Ed. 533 (1924) (“[Wjhere the bankrupt law deals with property rights ... regulated by state law, the federal courts in bankruptcy will follow the state courts; but when the language of Congress indicates a policy requiring a broader *84 construction of the statute than the state decisions would give it, federal courts can not be concluded by them.”) (citation omitted); see also In re Gunder, 8 B.R. 390, 392 (Bkrtcy.S.D.Ohio 1980) (state law determines type or extent of debtor’s interest in property; federal law determines whether that property is part of bankruptcy estate).

. 11 U.S.C. § 1306(a), (a)(1).

. See Moore v. Board of Educ., 84 N.Y.S.2d 417, 424, 274 App.Div. 403, 410 (App.Div.1948) aff’d, 299 N.Y. 666, 87 N.E.2d 59 (1949) (“[T]he purpose of the [pension] statute is ... to provide an actuarially sound system giving retirement rights and other benefits to members. Those rights and benefits are contractual obligations of the state and participating organizations by constitution and statute.”).

. The use of “necessary or appropriate” is in keeping with congressional intent that bankruptcy courts would, under the new Act, deal with all phases and aspects of a bankruptcy proceeding. Compare 11 U.S.C. § 105(a) with 11 U.S.C. 11(a)(15) of the old Act empowering bankruptcy courts to make “such orders, issue such process, and enter such judgments ... as may be necessary for the enforcement of ... this title.”

. Section 101(14) defines “entity” as including both trusts and governmental units. 11 U.S.C. § 101(21) defines “governmental unit” to include a “department, agency, or instrumentality of ... a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state.” There is thus little question that the retirement systems are “entities” subject to income deduction orders. See Sunlit Gardens, Inc. v. Moore, 48 N.Y.S.2d 376, 377, 183 Misc. 343, 343 (Sup.Ct.1944) (holding that operation of the New York Employees’ Retirement System “necessarily constitutes a direct participation by the State in its governmental functions”); N.Y. Retire. & Soc. Sec. Law § 13(b) (McKinney 1971) (“The comptroller shall be trustee of the several funds of the retirement system.”).

. See S.Rep.No.989, 95th Cong., 2d Sess. 13, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5799 (stating that former Chapter 13 was “basically and seriously defective .... [because it did not] permit some individuals with regular income to qualify, such as small business owners or social welfare program recipients, because their principal incomes do not come from wages, salary, or commissions.... The new chapter 13 will permit almost any individual with regular income to propose and have approved a reasonable plan for debt repayment based on that individual’s exact circumstances.”).

. A trust is considered “spendthrift” in form if it restricts the beneficiary’s right to alienate the income, principal, or both. See generally, 1 A. Scott, The Law of Trusts § 151, at 741 (1939); Restatement (Second) of Trusts § 152(2) (1959) (“A trust in which by the terms of the trust or by statute a valid restraint on the voluntary and involuntary transfer of the interest of the beneficiary is imposed is a spendthrift trust.”).

. We note that under New York law all express trusts are presumed to be spendthrift unless the settlor expressly provides otherwise. See N.Y. Est. Powers & Trusts Law § 7-1.-5(a)(1) (McKinney 1981-82 Supp.). The New York Court of Appeals stated in Caravaggio v. Retirement Bd., 36 N.Y.2d 348, 354, 329 N.E.2d 165, 169, 368 N.Y.S.2d 475, 481 (1975) that a state pension plan was not “unlike a spendthrift trust, except that it is stronger in purpose by virtue of statute and Constitution.” In Caravaggio, however, the court dealt with a situation where a deceased pensioner had named a second wife as a death beneficiary after he had assigned those rights to his first wife pursuant to a separation agreement. The court concluded that the first assignment could not be honored because this would be contrary to the state’s policy of preserving unfettered a pensioner’s right to designate a beneficiary and it was in this context that the court referred to the fund as being not unlike a “spendthrift” trust. In cases under Chapter 13, of course, the “assignment” is not permanent; Chapter 13 plans are ordinarily of three years’ duration, and they can never exceed five years’ duration, 11 U.S.C. § 1322(c) (“plan may not provide for payments over a period ... longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.”). Moreover, Chapter 13 is voluntary and at any time a debtor may opt out. 11 U.S.C. § 1307(a).

. See, e.g., Zeigler Coal Co. v. Kleppe, 536 F.2d 398, 406 (D.C.Cir.1976).

. Indeed, the Internal Revenue Code provides that “[ujnless the Secretary otherwise establishes by regulations” a letter ruling “may not be used or cited as precedent.” 26 U.S.C. § 61100(3) (1976).