**In re Donald KREISS and Randi Kreiss, Debtors.**

**Philip R. MANN, as Chapter 7 Trustee of Donald Kreiss and Randi Kreiss, Plaintiff,**

v.

**Donald KREISS (individually and in his capacities as Executor and Testamentary Trustee under the Will of Jack Kreiss, deceased), Robert Morris (individually and in his capacities as Executor and Testamentary Trustee under the Will of Jack Kreiss, deceased), and Ira Berliner (individually and in his capacity as Testamentary Trustee under the Will of Jack Kreiss, deceased), Defendants.**

No. 85 CV 3983.

United States District Court, E.D. New York.

March 17, 1986.

Gabriel Schwartz, Hahn & Hessen, New York City, for plaintiff.

Martin F. Brecker, Wofsey, Certilman, Haft, Lebow & Balin, New York City, for defendants.

OPINION AND ORDER

KORMAN, District Judge.

Jack Kreiss died on May 24, 1984, of cancer and heart disease. On April 10,

1984, less than eight weeks prior to his death, he executed a second codicil ("Second Codicil") to his last will and testament. The Second Codicil revoked a 50% outright bequest to Mr. Kreiss' son Donald under the will, and substituted a discretionary trust which named the defendants Morris and Berliner as trustees. Morris and Berliner are longtime attorneys and close family friends of Donald Kreiss. Under the terms of the Second Codicil, the defendant-trustees were granted the power to pay over to Donald, at any time during his lifetime, all of the income and principal of the trust, whose alleged value is approximately $2,000,000.

One week after the execution of the Second Codicil, the reason for the alteration of the bequest to Donald Kreiss became apparent. On April 17, 1984, Donald and his wife, Randi ("the debtors"), filed a joint petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Eastern District of New York. Philip Mann (the "Trustee") was elected Trustee in Bankruptcy of the debtors. Understandably curious about the alteration of the bequest to Donald Kreiss, the Trustee obtained an order from the Bankruptcy Court, on September 25, 1984, authorizing him to examine the subscribing witnesses to the Second Codicil pursuant to Bankruptcy Rule 2004.

On December 20, 1984, Donald, in his capacity as executor of the testator's estate,[1] moved to vacate the Rule 2004 examination order on the ground that only the Surrogate's Court had jurisdiction over the subject matter and that the Surrogate's admission to probate of the Second Codicil rendered its validity and effect *res judicata*. On February 7, 1985 the Bankruptcy Court denied the motion, stating, *inter alia*, "if the trustee obtains evidence that the discretionary trust created by the codicils is 'illusory,' he may seek to have the debtor declared the outright beneficiary of the trust *res*, and thereby bring the *res* into the estate."

Between April 10, 1985 and September 13, 1985, the Trustee proceeded to conduct examinations of the subscribing witnesses, of Morris and Berliner, and of the debtors. The Trustee concluded, based on information obtained through these examinations, that Morris and Berliner are not independent trustees of the trust established under the Second Codicil, but are rather acting as Donald's "nominees" under a covert agreement with the testator and Donald that they will turn over the entire corpus and income of the $2,000,000 trust to Donald, at his bidding, as soon as the bankruptcy case is over. Thus, the Trustee alleges, Donald and his attorneys are participants in a plan to deprive creditors of their rights under Section 541(a)(5)(A) of the Bankruptcy Code, 11 U.S.C. Section 541(a)(5)(A), to property of the debtor, through the instrumentality of an illusory testamentary trust.

On September 20, 1985, apparently in response to such claims on the part of the Trustee, Morris and Berliner commenced a will construction proceeding in the Surrogate's Court. They sought a declaration that the Second Codicil created a valid discretionary trust which, they argue, is exempt from the debtor's creditors by virtue of Bankruptcy Code Section 541(c)(2) and New York Civil Practice Law and Rules Sec. 5205(c). Section 541(c)(2) of the Bankruptcy Code provides that a restriction on the transfer of a beneficial interest of the debtor in a trust that "is enforceable under non-bankruptcy law" is enforceable in a bankruptcy case. Section 5205(c) of the Civil Practice Law and Rules provides that any property held in trust for a judgment debtor is exempt from application to the satisfaction of a money judgment, where the trust was created by one other than the judgment debtor.

On September 30, 1985, the Trustee commenced an Adversary Proceeding in the Bankruptcy Court (the "Adversary Pro-

---

**1.** The last will and testament and the accompanying codicils were admitted to probate by the Nassau County Surrogate on July 5, 1984.

ceeding"), pursuant to 11 U.S.C. Sections 541(a)(5)(A) and 542, seeking a turnover and accounting of the corpus of the trusts created by the two codicils.

 Defendants Morris and Berliner now seek an order pursuant to 28 U.S.C. Section 1334(c)(1), abstaining (on behalf of the Bankruptcy Court) from jurisdiction over the Adversary Proceeding filed by the Trustee on the ground that the issues raised in such proceeding ought more properly to be decided in the Surrogates Court, County of Nassau.[2]

## DISCUSSION

28 U.S.C. Section 1334 provides, in pertinent part:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under Title 11.

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for state law, from abstaining from hearing a particular proceeding arising under Title 11 or arising in or related to a case under Title 11.

Defendants argue that this Court should abstain from hearing the Trustee's Adversary Proceeding because the issues raised are fundamentally issues of state law.

The Adversary Proceeding seeks a turnover of the debtor's assets pursuant to Sections 541 and 542 of the Bankruptcy Code. Section 542 requires that anyone in possession of property of the bankruptcy estate must deliver it to the bankruptcy trustee, and account for such property or the value thereof. In Section 541(a)(1), the Code broadly defines "all legal or equitable

interests of the debtor in property" as property of the debtor's estate in bankruptcy. Section 541(a)(5) specifically includes:

any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise or inheritance.

Section 541(c)(1)(A) further provides that an interest of the debtor in property becomes property of the estate "notwithstanding any provision ... that restricts or conditions transfer of such interest by the debtor." "This 'substantial departure ... from the extensive reliance of the [former Act] on nonbankruptcy law ... to determine what property will come into the estate' reflects a congressional intent to 'include[] as property of the estate all property of the debtor, even that needed for a fresh start.'" *Regan v. Ross*, 691 F.2d 81, 83 (2d Cir.1982).

The only exception to the all-inclusive provisions of Section 541 is found in Section 541(c)(2), which provides:

a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title.

 That section has been interpreted to exempt from the debtor's estate only those "spendthrift trusts" traditionally beyond the reach of creditors under state law. *Matter of Goff*, 706 F.2d 574 (5th Cir.1983). A trust is considered spendthrift in form if it restricts the beneficiary's rights to alienate the income, principal, or both. *Regan*

---

**2.** A district court judge has subject matter jurisdiction to decide the abstention question pursuant to 28 U.S.C. Section 1334 on behalf of the Bankruptcy Court. See, *e.g., In re Cooper*, 47 B.R. 842 (Bankr.W.D.Mo.1985). Moreover, even if jurisdiction were lacking here because of Chief Judge Weinstein's August 1984 order referring to the Bankruptcy Judges for the Eastern District of New York all cases under Title 11 (and all proceedings arising under Title 11 or arising in or related to a bankruptcy case filed

under Title 11), *cf., In re Chosar Corporation*, 41 B.R. 948 (W.D.Va.1984), such a jurisdictional defect could be remedied by withdrawal of the reference to the Bankruptcy Court pursuant to 28 U.S.C. Section 157(d), and subsequent remand after determination of this abstention motion. Accordingly, the reference effectuated pursuant to the order of Chief Judge Weinstein is withdrawn for the purpose of permitting the consideration and resolution of this abstention motion.

*v. Ross,* 691 F.2d 81, 85 n. 13 (2d Cir.1982), *citing,* 1A Scott, The Law of Trusts Section 151, at 741 (1939); Restatement (Second) of Trusts Section 152(2) (1959).

■ Defendants argue that the question whether the trust created by the Second Codicil is beyond the reach of creditors is a question of state law which should be determined by the Surrogate's Court. In this regard, defendants contend that the question involves determinations regarding the validity and construction of the provision of the Second Codicil which created the trust, and point to the fact that the State of New York has seen fit to create, in the form of the Surrogate's Court, a "specialized cadre of judges" to administer probate matters. See *Dragan v. Miller,* 679 F.2d 712 (7th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982).

The difficulty with the defendants' argument is that there is not present here any difficult or complex issue that requires the expertise of one of "the specialized cadre of judges" who administer probate matters in New York—in this case, the distinguished and respected Surrogate of Nassau County. Moreover, even if the trust is valid under New York law, there remain to be considered issues involving the application and construction of the Bankruptcy Code. These considerations, which will be presently outlined, suggest that abstention is inappropriate here.

There is no dispute regarding the language of the will or the facial validity of the testamentary trust. There is likewise no dispute that the testator's intention was not to make his son's creditors beneficiaries of his estate. Moreover, we know from the decision in *Hull v. Farmers Loan & Trust Co.,* 245 U.S. 312, 38 S.Ct. 103, 62 L.Ed. 312 (1917), which the Supreme Court heard on a writ of error to the New York Court of Appeals, that New York law will permit a testator to bequeath property subject to the explicit condition that such property will be held in trust until such time as his beneficiary's debts are discharged in the bankruptcy, and that the Supreme

Court held that such a trust was not subject to claims of creditors under the Bankruptcy Act. The covert agreement alleged by the Trustee here amounts to no more than a stipulation which, under *Hull v. Farmers Loan & Trust Co., supra,* the testator could have written into his will. Accordingly, the defendants argue, the Surrogate will either sustain the validity of the trust, despite the covert agreement, or, if he finds that the covert agreement impermissibly varies the terms of the will,[3] he will use his supervisory powers to appoint trustees who will act without regard to any covert understanding that may have been reached.

The Trustee suggests, however, that *Hull v. Farmers Loan & Trust Co.* has been undermined by recent amendments to the Bankruptcy Code which more expansively define the property of the estate (to include all property of the debtor, "even that needed for a fresh start"). He asserts, moreover, that Section 541(c)(2) exempts only traditional spendthrift trusts from the reach of creditors of beneficiaries in bankruptcy. The trust at issue here, he alleges, is not a traditional spendthrift trust. Under these circumstances, even if the trust is valid under New York law, it will still be necessary to resolve issues relating to the meaning and interpretation of the Bankruptcy Code. Because these questions should be resolved by the Bankruptcy Court, abstention is not warranted even if the Bankruptcy Court may also be required to apply New York law. As Judge Miner observed in *Matter of Ross,* 18 B.R. 364, 367 (N.D.N.Y.1982), *aff'd sub nom. Regan v. Ross,* 691 F.2d 81 (2d Cir. 1982):

> Although the debtor's interest in property will be initially determined by non-bankruptcy law, the question of what constitutes property within the meaning of Section 541 is a federal question ...

Accord, *In re Tom Carter Enterprises, Inc.,* 44 B.R. 605 (C.D.Cal.1984) ("Adjudicating the rights to the Nevada property

---

3. See generally, *Richardson on Evidence,* Section 630 (10th ed. [Prince] 1973).

under bankruptcy law is, by definition, a bankruptcy issue to be adjudicated by the bankruptcy court and not by the Nevada probate court.").

The decision to retain jurisdiction is supported by a finding that the Trustee's Adversary Proceeding is a "core" and not a "related" proceeding. The distinction between the role of the Bankruptcy Courts in "core" versus non-"core" proceedings is the essence of the jurisdictional system designed by Congress in the wake of the Supreme Court's invalidation of 28 U.S.C. Section 1471(b), under Article III of the Constitution, in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *In re Lion Capital Group,* 46 B.R. 850 (Bankr.S.D.N.Y.1985).

A "related" or non-"core" proceeding is one in which, under 28 U.S.C. Section 157(c)(1), a bankruptcy judge may submit proposed findings of fact and conclusions of law, but may not issue final judgments. Defendants argue persuasively that, if the Trustee's Adversary Proceeding is a "related proceeding", the Bankruptcy Court's inability to issue a final judgment should be a factor weighing in favor of abstention. Defendants also note that under 28 U.S.C. Section 1334(c)(2), if a case is found to be only "related" to a bankruptcy case, and lacking independent grounds for federal jurisdiction, then the district court must abstain if another action has been commenced and can be timely adjudicated in a state forum.[4]

In Section 157(b)(2), Congress sought to define core proceedings by setting forth fifteen types of matters which fall within but do not circumscribe its meaning. The list includes the following: (1) "matters concerning the administration of the estate," (2) "orders to turn over property of the estate," (3) "allowance or disallowance of claims against the estate," and (4) "other proceedings affecting ... the adjustment of the debtor-creditor ... relationship...."

██ The parties here both adopt the Tenth Circuit's definition of "related" proceedings as "those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court." *Matter of Colorado Energy Supply, Inc.,* 728 F.2d 1283, 1286 (10th Cir.1984) (referring to the Interim Operating Rule adopted after *Marathon* ). Because Section 157(b)(3) specifically provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law,"[5] the resolution of this issue involves an analysis of the "nexus" between the proceeding involving a state law cause of action and the bankruptcy estate. *In re Lion Capital Group, supra,* 46 B.R. 850.

Particularly apposite here is *In re Kaiser,* 722 F.2d 1574 (2d Cir.1983). There, the appellant argued that, because the Trustee's suit to impose a constructive trust on real property held by the debtor's wife due to the debtor's alleged fraudulent transfers could have been brought in state court, it

---

**4.** 28 U.S.C. Section 1334(c)(2) provides:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding, if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Section 1334(c)(2) applies only to cases under Title 11 that were pending on July 10, 1984, or to proceedings arising in or related to such

cases. See Section 122(a) of Pub.L. 98–353. Both sides concede that Section 1334(c)(2) does not apply in this case since the bankruptcy petition at issue was not filed until April 17, 1984. Nonetheless, since the defendants offer Section 1334(c)(2) as a guideline for the types of cases in which the court should abstain, *see, e.g., In Re Environmental Research & Development, Inc.,* 46 B.R. 774, 12 C.B.C.2d 1296 (S.D.N.Y. 1985), the issue of "related" versus "core" proceedings will be briefly addressed.

**5.** *See also In re Tom Carter, supra,* 44 B.R. at 608 ("The involvement of state-created rights in a bankruptcy matter does not, *ipso facto,* result in a finding that it is not a core matter").

was a "related" proceeding. The Court of Appeals rejected this argument. Specifically, it observed:

It is certainly true that state courts commonly impose constructive trusts. What appellant ignores, however, is that this action was brought as a result of his fraudulent transfers in light of the bankruptcy laws. This action is inextricably tied to the creation of the estate in bankruptcy for the benefit of Gerald Kaiser's creditors; there would be no cause of action without the federal bankruptcy statutes that authorize it. In other words, federal law provides the *right* upon which the remedy of the constructive trust sought here is based ... The present action is not a "traditional" action to impose a constructive trust upon real estate. It has no life of its own in either state or federal common law or statute independent of the federal bankruptcy laws.

*Id.* at 1582.

■ Similarly, despite defendant's assertion here that the Trustee, or any creditor, could have brought an action in state court to "seek to attach the trust principal on the grounds under which Mann is proceeding," the Trustee's action is neither a "traditional" one to attach assets, nor a "traditional" one to declare the validity or construction of a testamentary trust. It is, instead, an action brought pursuant to Bankruptcy Code Section 541(a)(5)(A) seeking to claim property which, it is alleged, the debtor became entitled to acquire within 180 days after the petition was filed, and to determine whether such property falls within the exception provided by Bankruptcy Code Section 541(c)(2). Thus, the nexus between the proceeding and the bankruptcy estate is sufficiently close to find that it is a "core" proceeding in which the bankruptcy judge may issue a final judgment and that, accordingly, there is no reason to grant the motion to abstain.

As stated by Judge Buschman in *In re Lion Capital Group, supra,* 46 B.R. 850:

The "prime objective" of bankruptcy "remain[s] the simple one of getting credi-

tors paid" ... Administrative matters, turn over proceedings to bring into the estate accounts receivable, insurance proceeds, and other matured debts are crucial to achievement of that goal.... That they be done quickly by a specialized adjunct court is particularly important in view of the automatic stay of creditors pursuing their state law remedies, as is now provided by Section 362(a) of the Bankruptcy Code. To refer such matters to crowded district court calendars or to the even greater backlogged state court systems is to greatly impair, if not defeat, the goals of rehabilitation and payment of creditors.

■ Finally, the fact that discovery pertaining to the Trustee's claims has already been conducted pursuant to the Bankruptcy Court's order for over a year provides further support for the decision not to abstain.

Accordingly, it is ordered that the motion by defendants Morris and Berliner to abstain is denied.