852 F.2d 455
 Bankr. L. Rep. P 72,420
In re Dale Howard FIETZ, Debtor.
Dale Howard FIETZ, Plaintiff,
v.
GREAT WESTERN SAVINGS, a Federal Savings and Loan
Association, Defendant/Cross- Defendant/Appellee,
v.
Gloria K. (Fietz) GORDON, Cross-Claimant/Appellant.
 No. 86-2161.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 9, 1988.
Decided July 21, 1988.
 
 Forden Athearn, San Francisco, Cal., for cross-claimant/appellant.
 Ronald Rus, Alvarado, Rus & McClellan, Orange, Cal., for defendant/cross-defendant/appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before FARRIS, BRUNETTI and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 This case presents an issue of subject matter jurisdiction under 28 U.S.C. Sec. 1471(b) (1982) (presently at 28 U.S.C. Sec. 1334(b) (Supp. IV 1986)). Gloria Gordon filed a cross-claim against Great Western in the Chapter 13 bankruptcy proceeding of her former husband, Dale Fietz. In opposition to Great Western's motion to dismiss, Gordon argued the claim was "related to" Fietz' bankruptcy proceeding. The district court rejected this argument and dismissed Gordon's cross-claim for lack of subject matter jurisdiction. The district court issued a Rule 54(b) certification to permit this appeal by Gordon. See Bankr.R. 7054. We have jurisdiction under 28 U.S.C. Sec. 158(d) (Supp. IV 1986), and we affirm.
 
 
 2
 * FACTS AND PROCEDURAL HISTORY
 
 
 3
 Dale Fietz and Gloria Gordon (formerly Gloria Fietz) were husband and wife. They separated in October 1981. One of their community property assets was a house in Marin County, California. The house was security for a loan from Northern California Savings ("NCS"). NCS recorded a notice of default on July 7, 1982. The deed of trust securing the loan had a "due-on-sale" clause. Fietz found a buyer, and on July 20, 1982, the buyer signed an agreement to purchase the property if it could be obtained with "wrap-around" financing. Great Western, which acquired NCS and its assets on July 31, 1982, refused consent to the wrap-around financing; it demanded compliance with the due-on-sale clause. The proposed sale fell through. Fietz then filed his Chapter 13 petition.
 
 
 4
 In his petition, Fietz listed as an asset a potential claim against Great Western under California law based on Great Western's allegedly improper demand for enforcement of the due-on-sale clause. The bankruptcy court confirmed a plan for payment of Fietz' creditors on March 8, 1983. On May 6, 1983, the bankruptcy court authorized the filing of an adversary proceeding by Fietz, as debtor in possession, against Great Western based on Great Western's insistence on enforcement of the due-on-sale clause. The house was sold on May 25, 1983, for less than it would have brought if Great Western had not insisted on enforcing its due-on-sale clause. On June 15, 1983, Fietz filed the authorized adversary proceeding against Great Western. He sought damages for Great Western's failure to consent to the wrap-around financing. Fietz joined his wife, Gordon, as a defendant in the action. On July 14, 1983, she filed a cross-claim against Great Western in which she alleged substantially the same facts Fietz alleged in his adversary proceeding complaint.
 
 
 5
 On September 28, 1983, the California Superior Court dissolved the marriage between Fietz and Gordon. Their community property was divided pursuant to a marital settlement agreement dated September 6, 1983. Fietz was discharged from his Chapter 13 bankruptcy proceeding on January 23, 1984. A bankruptcy court order dated June 1, 1984, granted partial summary judgment in the adversary proceeding in favor of Fietz and Gordon and against Great Western on the issue of Great Western's liability for having enforced the due-on-sale clause. On May 23, 1985, the bankruptcy court denied Great Western's motion to dismiss, for lack of jurisdiction, Fietz' claim and Gordon's cross-claim. Great Western appealed this order to the district court. The district court had discretion to hear the appeal from the bankruptcy court's interlocutory order under 28 U.S.C. Sec. 158(a) (Supp. IV 1986). See Walther v. King City Transit Mix, Inc. (In re King City Transit Mix, Inc.), 738 F.2d 1065, 1066 (9th Cir.1984) (applying the earlier version of Sec. 158(a), 28 U.S.C. Sec. 1334(b) (1982)). On May 12, 1986, the district court determined that the bankruptcy court had jurisdiction over Fietz' claim but not over Gordon's cross-claim. Pursuant to the district court's Rule 54(b) certification, Gordon now appeals the district court's dismissal of her cross-claim for lack of subject matter jurisdiction.
 
 II
 ANALYSIS
 
 6
 Section 1471(b) confers on the district court jurisdiction over "all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. Sec. 1471(b) (1982) (presently at 28 U.S.C. Sec. 1334(b) (Supp. IV 1986)). The Supreme Court's opinion in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), did not disturb the jurisdiction of the district courts over proceedings "related" to bankruptcy. See Lucas v. Thomas (In re Thomas), 765 F.2d 926, 929 (9th Cir.1985). "The Court's holding in [Northern Pipeline ] establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review." Thomas v. Union Carbide Agric. Products Co., 473 U.S. 568, 584, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985).
 
 
 7
 After Northern Pipeline, federal jurisdiction over matters allegedly related to a bankruptcy case is best analyzed in two steps. See FDIC v. Majestic Energy Corp. (In re Majestic Energy Corp.), 835 F.2d 87, 90 (5th Cir.1988). First, we determine whether federal jurisdiction existed in the district court. If it did, then we next decide whether the bankruptcy court exercised only those powers constitutionally available to it, as described in Northern Pipeline. If the district court has no jurisdiction over a particular proceeding, then neither does the bankruptcy court. See 28 U.S.C. Sec. 157 (Supp. IV 1986); N.D.Cal.General Order 24 (effective Dec. 24, 1982). Thus, we first consider whether the district court had jurisdiction over Gordon's cross-claim under Congress's grant of jurisdiction over proceedings related to a bankruptcy case.
 
 
 8
 Various circuits have developed slightly different definitions of what constitutes a "related" case under section 1471(b) and its identical successor, section 1334(b). The Third Circuit articulated what has become the dominant formulation:
 
 
 9
 The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. [citations omitted]. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.
 
 
 10
 Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original). The Fourth, Fifth and Eighth Circuits have adopted the Pacor definition without modification. See Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir.1987); Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch, U.S.A., Inc.), 810 F.2d 782, 786 (8th Cir.1987); A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.), 788 F.2d 994, 1002 n. 11 (4th Cir.) (dicta), cert. denied, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).
 
 
 11
 The Second, Sixth and Seventh Circuits have adopted definitions similar to the one announced in Pacor, but their formulations may deny jurisdiction in cases where the dispute is "conceivably" related to the bankruptcy estate, but that relationship is remote. See Turner v. Ermiger (In re Turner), 724 F.2d 338, 341 (2d Cir.1983); Kelley v. Nodine (In re Salem Mortgage Co.), 783 F.2d 626, 634 (6th Cir.1986); Elscint, Inc. v. First Wisconsin Fin. Corp. (In re Xonics, Inc.), 813 F.2d 127 (7th Cir.1987).
 
 
 12
 We conclude that the Pacor definition best represents Congress's intent to reduce substantially the time-consuming and expensive litigation regarding a bankruptcy court's jurisdiction over a particular proceeding. See H.Rep. No. 595, 95th Cong., 2d Sess., 43-48, reprinted in 1978 U.S. Code Cong. & Admin. News, 5787, 5963, 6004-08. The Pacor definition promotes another congressionally-endorsed objective: the efficient and expeditious resolution of all matters connected to the bankruptcy estate. See id. We therefore adopt the Pacor definition quoted above.[1] We reject any limitation on this definition; to the extent that other circuits may limit jurisdiction where the Pacor decision would not, we stand by Pacor. Applying the Pacor definition to the facts at hand, we consider whether the outcome of Gordon's cross-claim conceivably could have affected the administration of Fietz' bankruptcy estate when Gordon filed her cross-claim on July 14, 1983.[2]
 
 
 13
 Gordon contends that her cross-claim against Great Western was property of Fietz' bankruptcy estate. She argues that California law characterizes her cause of action as community property. Community property is part of the bankruptcy estate. See 11 U.S.C. Sec. 541(a) (1982). The alleged community property nature of Gordon's cross-claim is the only nexus between it and Fietz' Chapter 13 bankruptcy estate upon which jurisdiction might be based. If Gordon's cross-claim was not community property when it was filed, then the district court did not have jurisdiction because there would not have been any conceivable relationship between the outcome of the cross-claim and the bankruptcy estate. We assume for the purpose of the following analysis that Gordon's claim was community property, which leads us to treat her claim as part of the bankruptcy estate. See id. Even with this assumption, however, we conclude that the district court did not have jurisdiction over Gordon's cross-claim.
 
 
 14
 At the time Gordon filed her cross-claim, Fietz' Chapter 13 plan had been confirmed by an order of the bankruptcy court. Once a Chapter 13 plan is confirmed, all of the property of the estate vests in the debtor and creditors are precluded from asserting any other interest than that provided for them in the confirmed plan. See 11 U.S.C. Sec. 1327 (1982); Anaheim Savings & Loan Ass'n v. Evans (In re Evans), 30 B.R. 530, 531 (9th Cir. BAP 1983). Gordon argues that if she had obtained a speedy recovery, Fietz' bankruptcy estate would have been enlarged and his creditors could have sought an amendment to his Chapter 13 plan to increase their recovery. However, at the time relevant to our jurisdictional inquiry, July 1983, Fietz' creditors did not have standing to seek modification of the Chapter 13 plan unless the order confirming the plan was obtained by fraud. See 11 U.S.C. Sec. 1330 (1982). There is no allegation of fraud in this case.
 
 
 15
 Gordon argues that Fietz' creditors could have modified the plan under 11 U.S.C. Sec. 1329. This is not correct. For bankruptcy petitions filed before October 8, 1984, section 1329 only permitted the debtor to seek a modification of the plan. See In re Mosley, 74 B.R. 791, 798-99 (Bankr.C.C.Cal.1987); Pub.L. No. 98-353, Sec. 553(a), 98 Stat. 333, 392 (1984); 11 U.S.C. Sec. 1329 (1982) (current version at 11 U.S.C. Sec. 1329 (Supp. IV 1986)). Fietz' creditors therefore had no power to seek a modification of his Chapter 13 plan.[3]
 
 
 16
 Gordon also suggests that bankruptcy jurisdiction exists because the claim against Great Western was listed as an asset by Fietz in his Chapter 13 petition. Gordon argues that her cause of action made the plan more acceptable to creditors because, despite its uncertain value, it tended to increase the likelihood that money would be available to enable Fietz to meet his obligations under the proposed plan. The confirmation of the plan before the action against Great Western was filed, however, destroyed any possible relationship between the outcome of the suit and the administration of the bankruptcy estate. See Pacor, 743 F.2d at 994.
 
 CONCLUSION
 
 17
 Even if Gordon's cross-claim was community property on the date it was filed, its outcome could not have had any conceivable effect on the administration of the bankruptcy estate. The version of 11 U.S.C. Sec. 1329 that was in force in July 1983 did not permit creditors to seek a modification of a confirmed Chapter 13 plan. Once the Chapter 13 plan was confirmed, it was binding on the debtor and all creditors. 11 U.S.C. Sec. 1327(a) (1982). Thus, even if Gordon's cross-claim resulted in a substantial recovery, that recovery would have been beyond the reach of Fietz' creditors because they could not have modified the confirmed Chapter 13 plan. Gordon's cross-claim was therefore not "related to a case under title 11." 28 U.S.C. Sec. 1471(b) (1982) (presently at 28 U.S.C. Sec. 1334(b) (Supp. IV 1986)). The district court did not have jurisdiction over Gordon's cross-claim.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 We note that the bankruptcy judges in the Ninth Circuit have applied the Pacor definition of relatedness. See National Acceptance Co. of Cal. v. Levin, 75 B.R. 457, 458 (D.Ariz.1987); Taxel v. Commercebank (In re World Financial Serv. Center, Inc.), 64 B.R. 980, 988 (Bankr.S.D.Cal.1986); Gennari v. United States Dep't of Treasury (In re Educators Inv. Corp.), 59 B.R. 910, 913 (Bankr.D.Nev.1986)
 
 
 [2]
 Subject matter jurisdiction should be determined as of the date that the complaint, or in this case the cross-claim, was filed. See Nuclear Eng'g Co. v. Scott, 660 F.2d 241, 248 (7th Cir.1981), cert. denied, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982); Gresham Park Community Org. v. Howell, 652 F.2d 1227, 1236 n. 25 (5th Cir. Unit B 1981). This is consistent with our rule that diversity jurisdiction is determined as of the date the complaint was filed. See Co-Efficient Energy Sys. v. CSL Indus., 812 F.2d 556, 557 (9th Cir.1987); Mann v. City of Tucson, Dep't of Police, 782 F.2d 790, 794 (9th Cir.1986)
 
 
 [3]
 Some courts have suggested that creditors may modify a Chapter 13 plan when the debtor defaults on the obligations outlined in the order confirming that plan. See Anaheim Savings, 30 B.R. at 531; In re Mosley, 74 B.R. at 799; In re Toth, 61 B.R. 160, 166 (Bankr.N.D.Ill.1986). Fietz was not in default on his obligations under the plan and therefore we need not address this issue