In re Wade I. TREADWAY, Debtor.

Wade I. TREADWAY, Plaintiff,

v.

UNITED BANK & TRUST COMPANY, as Trustee of the Morton C. and Faith I. Treadway Trust, and Wade I. Treadway, Defendants.

Bankruptcy No. 88–00003.
Adv. No. 89–00051A.

United States Bankruptcy Court,
D. Vermont.

March 29, 1990.

P. Hanlon, Montpelier, Vt., for United Bank and Trust Co., Hartford, Conn., as Trustee for the Morton C. and Faith I. Treadway Trust (Trust).

J. Sensenich, J. Meyers, P.C., White River Junction, Vt., for Wade I. Treadway, defendant (debtor).

## MEMORANDUM OF DECISION ON MOTION TO DISMISS

FRANCIS G. CONRAD, Bankruptcy Judge.

This proceeding[1] arises, like the ancient Egyptian Phoenix from its ashes, out of an adversary proceeding (*Treadway I*) brought by Debtor's Chapter 7 trustee. Instead of landing in Bankruptcy's nest, this proceeding flies to another jurisdiction.

In *Treadway I* we denied the Chapter 7 trustee's requested declaratory judgment and turnover of Debtor's trust interest because we determined it was a spendthrift trust, and excepted the interest from Debtor's Bankruptcy Estate under 11 U.S.C. § 541(c)(2).[2] Debtor now sues Trust for breach of fiduciary duty, good faith and undivided loyalty committed in *Treadway I* while acting as trustee of Debtor's contingent beneficiary interest.

Specifically, Debtor alleges Trust moved to amend and reverse our Decision in *Treadway I*. *Treadway I* is favorable to Debtor, but unfavorable to United Bank and Trust Company (Bank) of which Trust is a part. Although Trust quickly moved to withdraw its post-judgment request, Debtor alleges Trust irreversibly abandoned the stakeholder position it originally took in *Treadway I* as trustee and assumed a creditor position on behalf of Bank. Debtor charges Trust's change of hats was done to protect Bank's loan position on Debtor's pre-petition loans with Debtor which were collateralized by Debtor's trust interest. Additionally, Debtor charges

---

1. We have jurisdiction to determine this adversary proceeding under 28 U.S.C. § 1334(b) and the General Reference to this Court under Part V of the Local District Court Rules for the District of Vermont. This Memorandum of Decision constitutes conclusions of law under F.R. Civ.P. 52 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

2. *Raymond J. Obuchowski, Esq., Trustee v. United Bank & Trust (In re Wade I. Treadway)*, Adv.Pro. No. 88–0034, slip opinion, Conrad B.J. (March 31, 1989) *on reconsideration, Raymond J. Obuchowski, Esq., Trustee v. United Bank & Trust (In re Wade I. Treadway)*, Adv.Pro. No. 88–0034, slip opinion, Conrad B.J., 1989 WL 164735 (October 19, 1989), *aff'd, Raymond J. Obuchowski, Esq., Trustee v. United Bank & Trust (In re Wade I. Treadway)*, Civ. No. 89–348, Slip Op., Billings, C.J. (D.Vt. March 5, 1990). The District Court's opinion is on appeal to the Second Circuit. Familiarity with the foregoing Decisions is presumed.

Trust failed to protect Debtor's interest by using the same legal counsel for Bank as it had for Trust.

Trust entered an appearance in this adversary proceeding and seeks a pre-answer dismissal of this proceeding. For cause Trust asserts lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

Bank is not a named defendant in this adversary proceeding, but has participated directly in Debtor's Bankruptcy case.

First, on February 7, 1989, and prior to our spendthrift determination, Bank filed a proof of claim in Debtor's Bankruptcy Case as a perfected secured creditor in possession of an assignment of Debtor's interest in Trust. There has been no formal objection to Bank's proof of claim. The attorney who filed Bank's proof of claim also entered an appearance as Trust's counsel during the § 541(c)(2) [3] spendthrift determination. While the § 541(c)(2) Decision was under advisement on reconsideration, and after prompting from us about a possible conflict of interest, Bank's counsel filed a post-judgment motion to withdraw from *Treadway I* as Trust's counsel and entered an appearance as Bank's counsel.

Second, Bank filed on March 15, 1989 a "Motion for Allowance of Interest and Costs" under 11 U.S.C. § 506 [4] as an oversecured creditor. The same attorney that represented Trust as a stakeholder during *Treadway I* and, who had filed Bank's proof of claim, also filed Bank's § 506 motion.[5] Debtor's Chapter 7 trustee objected to Bank's § 506 motion on several grounds. He argued the Trust Agreement did not permit loans to be made with Debtor's Trust interest as collateral. "[S]uch loans" he argued, "defeat the purpose of the trust and 'smack' of self dealing." Trust is not the proper party to make the § 506 motion. Lastly, the Chapter 7 trustee argued that the determination of the § 506 motion was premature until we decided *Treadway I*.

Bank, without obtaining independent counsel for Trust, responded to the Chapter 7 trustee's objections. Bank argued that the terms of the trust and applicable nonbankruptcy law permitted its loan department to make collateralized trust loans to debtors who are also beneficiaries of

**3.** 11 U.S.C. 541(c)(2) provides:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

**4.** 11 U.S.C. § 506, **Determination of secured status,** provides:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

(c) The trustee may recover from property securing an allowed secured claim the reason-

able, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

**5.** Prior to our original § 541 Decision, Debtor, Debtor's Chapter 7 trustee and Trust did not appear to dispute their shared "assumption" that Bank was secured or that the trust was not spendthrift because it did not have a specific section entitled spendthrift. Because we dismiss this proceeding for lack of subject matter jurisdiction and do not reach the failure to state a claim upon which relief may be granted, we need not decide whether this shared erroneous assumption justifiably led original counsel for Trust to assume she had no actual conflict of interest in representing Bank on its proof of claim and § 506 motion while representing Trust during the original § 541 proceeding.

trusts managed by Bank's trust department.

At the Chapter 7 Trustee's suggestion and later agreement of the parties, the § 506 motion was held in abeyance until the outcome of *Treadway I.* After we entered our Decision, Bank filed on May 3, 1989, a "Withdrawal of [§ 506] Motion." This was followed two days later by Trust's attempt to withdraw its post-judgment motion to amend our spendthrift decision in spite of their "on the record" representation to us at a May 1, 1989 hearing that their post-judgment motion to amend was not being withdrawn. No formal action has been taken by us on Bank's attempt to withdraw its § 506 motion.

Instead of answering Debtor's complaint in this adversary proceeding, Trust moved to dismiss on the ground that we lack subject matter jurisdiction. Trust argues that Debtor's complaint does not raise a matter which arises in or is related to a Bankruptcy Case. Specifically, Trust argues that Debtor's cause of action arose post-petition and could not impact on Debtor's Bankruptcy Estate. Trust also moved to dismiss for failure to state a claim upon which relief can be granted.

Debtor argues that this proceeding is excepted from the general rule that post-petition Chapter 7 acquisitions are not part of the Bankrupt's Estate, because the facts which give rise to its cause of action occurred as part of the Estate's administration. Debtor states the "entire cause of action which [it] seeks to bring against the bank arose from the bank's participation in this bankruptcy case as a creditor as well as its participation in this case as a fiduciary to the debtor." Debtor's "Memorandum In Opposition to Defendant's Motion To Dismiss," page 4.

We discuss only our subject matter jurisdiction because its outcome is determinative of this proceeding. Although Debtor's

post-petition cause of action against Trust arose as a direct result of the Chapter 7 trustee's turnover action and although Bank has filed a proof of claim and sought to obtain attorney fees, costs and post-petition interest under § 506, we dismiss Debtor's action for lack of subject matter jurisdiction.

We begin with the challenge to our subject matter jurisdiction. *Unsecured Creditors Committee of Debtor, STN Enterprises, Inc. v. Noyes (In re STN Enterprises, Inc.)*, 73 B.R. 470 (Bkrtcy.D.Vt.1987) ("[w]e consider the Fed.Rules Civ.Proc. Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction first, because if we grant the 12(b)(1) motion, the remaining defenses and objections would become moot. See, 5 Wright & Miller, § 548." *Id.*, 73 B.R. at 477 aff'd, *Unsecured Creditors Committee of Debtor, STN Enterprises, Inc. v. Noyes (In re STN Enterprises, Inc.)*, Civ. No. 87–140, Slip Op., Billings, C.J. (D.Vt. April 22, 1988)).

A Rule 12(b)(1) challenge to our subject matter jurisdiction places the burden by a preponderance of the evidence on the party asserting we have jurisdiction. Additionally, a Bankruptcy Court has the independent responsibility to make a 28 U.S.C. § 157(b)(3)[6] determination that this proceeding is or is not a "core" matter or otherwise "related to" the pending Title 11 case.

Trust directs our attention to the United States Supreme Court's holding in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and later cases that warn of constitutional problems caused by Article I Courts overreaching their jurisdictional limitations.

28 U.S.C. § 1334[7] and 28 U.S.C. § 157,[8] respectively define the source of our subject matter jurisdiction and authority.

---

**6.** 28 U.S.C. § 157(b)(3), **Procedures,** provides:

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

**7.** 28 U.S.C. §§ 1334(a) and (b), **Bankruptcy Cases and Proceedings,** provide:

(a) Except as provided in subsection (b) of this section, the district courts shall have origi-

Four categories are provided by this jurisdictional scheme:

a) A case under Title 11;

b) A civil proceeding arising under Title 11;

c) A civil proceeding arising in a case under Title 11; and

d) A civil proceeding related to a case under Title 11.

*Taxel v. Commercebank (In re World Financial Services Center, Inc.),* 64 B.R. 980, 982, 14 BCD 1306, 15 CBC 2d 836, 838 (Bkrtcy.S.D.Cal.1986). *See, Allis–Chalmers Corp. v. Borg–Warner Acceptance Corp. (In re Dr. C. Huff Co., Inc.),* 44 B.R. 129, 134, 11 CBC.2d 1039 (Bkrtcy.W.D.Ky. 1984) (three classes of legal controversies: 1. core cases; 2. non-core related cases; and 3. non-core unrelated cases).

nal and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. *Id.*

8. 28 U.S.C. § 157. **Procedures,** provides in part:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law. . . .

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

.        .        .        .        .

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title."

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Under 28 U.S.C. § 157(a), the District Court may provide that any or all cases under Title 11 and any or all proceedings arising in or related to a case under Title 11 may be referred to Bankruptcy Judges for the district. VLBR 7012(a) contains the Bankruptcy Court's reference.

28 U.S.C. §§ 157(c)(1) and (2) provide that a Bankruptcy Judge may hear non-core proceedings that are otherwise related to a case under Title 11, but may not enter a final order or judgment without the consent of the parties. Instead, the Bankruptcy Judge must submit proposed findings of fact and conclusions of law for the District Court's de novo review.

■■■ The distinction between core and non-core is important in at least one respect, that being a Bankruptcy Court's ability to enter a final order. In a core matter we may enter a final order, but in a non-core matter we may not unless the parties otherwise agree. The distinction, however, does not affect our ability to hear the matter. We have subject matter jurisdiction regardless of its core or non-core status. *See, In re WEFCO, Inc.,* 97 B.R. 749 (E.D. N.Y.1989). Only if the matter is determined to be both non-core and non-related will we not have jurisdiction.

"Core" is not defined, nor is it limited to the fifteen nonexclusive categories contained in 28 U.S.C. § 157(b)(2). Some Courts have confined themselves to a narrow approach in ascertaining the scope of what matters may be core, while others have taken a more expansive approach. *See, Atlas Fire Apparatus, Inc. v. Beaver (In re Atlas Fire Apparatus, Inc.),* 56 B.R. 927, 932, 14 CBC.2d 429, 13 BCD 1304 (Bkrtcy.E.D.N.C.1986) (listing of representative cases within the two camps).

■■■ The mere characterization of an adversary proceeding within the core terms of 28 U.S.C. §§ 157(b)(2)(A)–(O) will not be dispositive whether the proceeding is core. *Taxel v. Commercebank (In re World Financial Services Center, Inc.), supra,* 64 B.R. at 986, 15 CBC.2d at 843 (Bkrtcy.S.D. Cal.1986). Moreover, just because the resolution of the action may turn on the application of State law, this will not, *ipso facto,*

turn this adversary proceeding into a non-core proceeding. 28 U.S.C. § 157(b)(3); *Mann v. Kreiss (In re Kreiss),* 58 B.R. 999, 1004 (E.D.N.Y.1986); *In re Tom Carter Enterprises, Inc.,* 44 B.R. 605, 609 (C.D. Cal.1984).

We are ever mindful of *Marathon's* plurality holding and Article III proscriptions:

[T]he 'adjunct' bankruptcy courts created by the Act [1978, 28 U.S.C. § 1471] exercise jurisdiction behind the facade of a grant to the district courts, and of exercising powers far greater than those lodged in the adjuncts approved in either *Crowel [Crowel V. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) ] or *Raddatz [U.S. v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ].

*Northern Pipeline Constr. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982) (brackets supplied for clarity). As one Court interpreted *Marathon:*

[T]he constitutional ability of an adjunct bankruptcy court to determine state law issues is to be determined by the nature and extent of control by Article III courts and whether there is a nexus between the proceeding involving a state law cause of action and the bankruptcy estate.

*Lessor v. A–Z Associates (In re Lion Capital Group),* 46 B.R. 850, 856, 12 BCD 840, 12 CBC.2d 59 (Bkrtcy.S.D.N.Y.1985), *aff'd,* 63 B.R. 199 (S.D.N.Y.1985). *See also, Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582 (2d Cir.1983); *Mann v. Kreiss (In re Kreiss),* 58 B.R. 999, 1004 (E.D.N.Y. 1986); *In re Satelco,* 58 B.R. 781, 786, 14 CBC.2d 487 (Bkrtcy.N.D.Tex.1986).

*Marathon* only invalidated the jurisdiction of the bankruptcy court to make final determinations in matters that could have been brought in a district court or a state court (i.e., 'related proceedings').... [I]n no way did *Marathon* implicate the jurisdiction of the bankruptcy courts in other matters within the 'traditional' bankruptcy jurisdiction. The Court's invalidation of the jurisdictional grant was on separability

grounds, not on the grounds that bankruptcy courts could not adjudicate traditional bankruptcy matters.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1580 (2d Cir.1983) (citation and footnote omitted).

Debtor's cause of action against Trust allegedly arises from Trust's change of legal capacity from being a mere stakeholder as trustee to an advocate as a secured creditor for Bank. This change of position was triggered by our § 541 determination. Debtor would not have this cause of action as presently plead but for Debtor's bankruptcy and the positions taken by Trust and Bank with respect to *Treadway I.* There have been no allegations of, nor any request to add, counts alleging pre-petition conflict of interests.

The post-petition timing of Debtor's cause of action is an important factor in determining its core or non-core nature. The Second Circuit recently advised us that a cause of action which arises post-petition in a Title 11 case may render its core. *Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania (In re Ben Cooper)*, 896 F.2d 1394, 1400 (2d Cir.1990).

We believe post-petition activity does not raise the *Marathon* issue. The State law claim in *Marathon* was based on "a right independent of and *antecedent* to the reorganization petition that conferred jurisdiction upon the bankruptcy court." *Northern Pipeline Constr. Co. v. Marathon Pipeline Co., supra,* 458 U.S. at 84, 102 S.Ct. at 2878 (emphasis added).

As a noted commentator has said on an analogous issue:

A conflict exists in cases decided under the 1984 legislation with respect to whether an action brought on a postpetition account receivable is a related or 'core' matter. The better result is that the proceeding is core; such a cause of action 'arises in' the title 11 case, and was not owned by the debtor at the time the title 11 case was commenced.

1 *Collier on Bankruptcy,* paragraph 3.01[iv], page 3–50 (15th Ed.1989) (footnotes omitted).

Debtor's cause of action has its genesis from our core determination that his interest in a trust was excepted from his Bankruptcy Estate. It is collateral to and after the fact of the § 541 determination. Its collateral and after the fact nature cuts against a core finding. There are other factors to our jurisdictional inquiry which determine whether Debtor's cause of action is core, non-core, related or non-related.

There is a significant distinction between post-petition disputes that arise during Chapter 11 and those that arise during Chapter 7.

Post-petition disputes that arise in a Chapter 11 case are usually core. They are core because they arise as a result of a debtor's bankruptcy and involve "matters concerning the administration of the estate," 28 U.S.C. §§ 157(b)(2)(A), "orders to turn over property of the estate," (b)(2)(E) or, "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship...." (b)(2)(O).[9]

---

**9.** *See e.g., Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania (In re Ben Cooper), supra,* 896 F.2d 1394 (2d Cir.1990) (held post-petition contract with a Chapter 11 debtor-in-possession is a core proceeding. *Ben Cooper* rejected in part the contrary position taken by *In re Castlerock Properties,* 781 F.2d 159, 14 BCD 322, 15 CBC2d 20, CCH BLR Para. 70970 (9th Cir.1986). After distinguishing *Castlerock's* contract as having arisen prepetition, *Ben Cooper* declined to follow this aspect of *Castlerock:*

In any event, we decline to follow the sweeping statement in *Castlerock* that:

'state law contract claims do not specifically fall within the categories of core proceedings

enumerated in 28 U.S.C. § 157(b)(2)(B)(–)(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections § [sic] 157(b)(2)(A) and (*o*).'

*Id.* at 162. Such a reading of the statute in our view would render the general provisions null.

*Ben Cooper, supra,* at 1595. *Ben Cooper* also rejected in part a contrary position taken in *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97, 17 CBC2d 743, CCH BLR Para. 71955 (5th Cir. 1987). The Second Circuit in *Ben Cooper, supra,* declined to follow only one aspect of *Wood:*

The Fifth Circuit stated in *In re Wood, supra,* 825 F.2d at 97, that 'a proceeding is core under section 157 if it invokes a substantive

Not every post-petition dispute effects the Estate, however. *See e.g., In re U.S. Seating Co., Inc.,* 105 B.R. 259, 260 (Bkrtcy.E.D.Pa.1989) (dismissed post-petition dispute between creditor and trustee's disbursing agent as to liability for real estate taxes, penalties, and interest that were not paid at the time of the sale of debtor's property); *Levovitz v. Verrazano Holding Corp. (In re Verrazano Holding Corp.),* 17 BCD 1162, 86 B.R. 755, 762, CCH BLR Para. 72371 (Bkrtcy.E.D.N.Y. 1988) (breach of contract and fraudulent representation claims brought by assignee of contract against nondebtor vendor were non-core, non-related matters over which Bankruptcy Court could not exercise jurisdiction, even assuming that vendor might have a claim to indemnification or contribution against the debtor for allegedly inducing it to breach contract); *Goldman v. Haverstraw Associates (In re R.H.N. Realty Corp.),* 84 B.R. 356, 359 (Bkrtcy.S.D.N.Y.1988) (Bankruptcy Court lacked jurisdiction over assignee's claim against non-debt-

right provided by title 11 or if it is a proceeding that, by its nature could only arise in the context of a bankruptcy case.' The court held that a claim under state law arising from a post-petition dispute did not fit either category. The instant appeal does not fit in the first category. We hold that the timing of a dispute may render it uniquely a bankruptcy case. To the extent that *Wood* conflicts with our holding, we decline to follow it.

*Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania (In re Ben Cooper), supra,* at 1400 (2d Cir.1990). There is no indication, however, that *Ben Cooper* would reject *Wood's* adaptation of *Pacor's* "conceivable effect" test for "related to" jurisdiction.); *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.),* 815 F.2d 165, 168 (1st Cir.1987) (DIP's post-petition action to collect a post-petition account receivable is a core proceeding); *Unsecured Creditors Committee of Debtor, STN Enterprises, Inc. v. Noyes (In re STN Enterprises, Inc.), supra,* Civ. No. 87–140, Slip Op., at page 8, Billings, C.J. (D.Vt. April 22, 1988) (post-petition cause of action against debtor's court-approved president was a core proceeding because it was "intertwined with the bankruptcy environment."); *Mangun v. Bartlett (In re Balboa Improvements, LTD.),* 99 B.R. 966, 969–970, 21 CBC2d 12 (9th Cir. BAP. 1989) (lawsuit against debtor's attorney for conspiracy to sabotage sale of estate asset prior to conversion to Chapter 7 is a core proceeding to extent any judgment would determine the proper administration of the estate asset. Claim for damages is a related proceeding under doctrine of pendent jurisdiction because it arose out of misconduct in the administration of the estate); *Umbreit v. Stump, Harvey & Cook, Inc. (In re Baltimore Motor Coach Co.),* 103 B.R. 103, 105–106 (D.Md.1989) (Chapter 7 Trustee's breach of contract or tort action against insurers for post-petition misconduct committed against a debtor while a debtor-in-possession is a core proceeding); *Edgcomb Metals Co. v. Eastmet Corp.,* 89 B.R. 546, 554 (D.Md.1988) (held buyer who knowingly contracts with a DIP is deemed to have consented to Bankruptcy Court's jurisdiction. A suit on a post-petition contract with DIP is a core proceeding); *Hershman v. Thorne, Grodnik & Ran-*

*sel (In Matter of Stockert Flying Service, Inc.),* 74 B.R. 704, 707–708 (N.D.Ind.1987) (creditors' malpractice claim against debtor's attorney for mishandling debtor-in-possession's estate assets was a core proceeding); *Ronald Lipshie, Trustee v. Am Cable TV Industries, Inc. (In re Geauga Trenching Corp.),* 110 B.R. 638 (Bkrtcy.E.D.N.Y. 1990) Conrad, B.J., (post-petition contract with creditor who claimed lack of knowledge about Chapter 11 filing deemed core proceeding); *Woodard v. Sicilia (In re SPI Communications & Marketing, Inc.),* 112 B.R. 507 (Bkrtcy.N.D.N.Y. 1990) (Chapter 7 trustee's malpractice action against debtor's Chapter 11 attorney is core proceeding); *Bass v. Millican (In re Telamarketing Communications),* 95 B.R. 794, 21 CBC2d 382 (Bkrtcy.D.Colo.1989) (Chapter 11 debtor's damage action which arose out of a post-petition contract for the sale of assets is core proceeding); *In re Standard Metals Corp.,* 97 B.R. 593, 596 (Bkrtcy.D.Colo.1988) (post-petition contract dispute over sale of major asset to fund debtor's reorganization is core proceeding); *Meininger v. Swasey (In re Sarasota Casual, Inc.),* 90 B.R. 496, 498 (Bkrtcy.M.D.Fla.1988) (Chapter 7 trustee's action for breach of post-petition contract that arose while debtor was a debtor-in-possession in Chapter 11 was core); *J.B. Van Sciver Co. v. William Cooper Associates, Inc. (In re J.B. Van Sciver Co.),* 73 B.R. 838, 844, 16 CBC 2d 1179 (Bkrtcy.E.D.Pa.1987) (action for breach of Court approved post-petition real estate sales agreement with debtor-in-possession is core proceeding); *Canadian Shield Financial Corporation Ltd. v. Estate of Deutscher (In re Vincent),* 68 B.R. 865, 869 (Bkrtcy.M.D.Tenn.1987) (disputes arising from orders confirming plan of reorganization are cognizable as matters affecting the administration of the estate. State law claim arising from plan confirmation is core proceeding); *Pester Refining Co. v. Mapco Gas Products, Inc. (In Matter of Pester Refining Co.),* 66 B.R. 801, 817–18 (Bkrtcy.S.D.Iowa 1986) (conversion claim brought by debtor-in-possession against a pre-petition creditor who converted property of the estate post-petition is core proceeding), *aff'd, Matter of Pester Refining Co.,* 85 B.R. 520 (S.D.Iowa 1987), *aff'd in part and rev'd in part on other grounds,* 845 F.2d 1476 (8th Cir.1988).

ors as alter egos of debtor for monies owed under deficiency judgment).

■ But if adjudication of the cause of action is essential to the administration of the Bankruptcy Estate, *see e.g., Germain v. Connecticut National Bank (In Matter of O'Sullivan's Fuel Oil Co., Inc.),* 88 B.R. 17, 20 (Bkrtcy.D.Conn.1988) (Chapter 7 trustee's action against a bank under causes of action that occurred predominately post-petition was core); *National Equipment & Mold Corp. v. Capital, Inc. (In re National Equipment & Mold Corp.),* 71 B.R. 24, 27 (Bkrtcy.N.D.Ohio 1986) (Chapter 7 trustee's assumption of an action previously brought by the DIP on a post-petition claim to recover funds placed in escrow as part of a contemplated loan under reorganization that did not materialize was core), the Courts will determine it to be a core proceeding. Thus, it is helpful to inquire whether the adjudication is cognizable as an action that will effect the administration of the estate or other matters affecting the debtor/creditor relationship.

■ We made a determination in *Treadway I* that Debtor's trust interest was excepted from Debtor's Chapter 7 Bankruptcy Estate. This determination not only takes Debtor's interest out of the Estate, it also takes this proceeding out from under the wing of our core jurisdiction. As a general rule in a Chapter 7 context, once a determination is made that we no longer have jurisdiction over excepted property, our jurisdiction over it desists beyond incidental issues such as administrative expenses. This proceeding is being prosecuted by the Chapter 7 Debtor. Any benefits that may accrue from the proceeding accrue to Debtor, not to his Estate. Debt-

or's collateral action is not "an essential part of administering the estate." *Ben Cooper, supra,* at 1400.

An exception to the general rule is whether a party has submitted to our jurisdiction in some other way and whether it would be fair to join Debtor's cause of action with other pending matters. *See, e.g., Unsecured Creditors Committee of Debtor, STN Enterprises, Inc. v. Noyes (In re STN Enterprises, Inc.), supra,* 73 B.R. 470 (Bkrtcy.D.Vt.1987).

Bank has participated in Debtor's Bankruptcy case in at least three ways. It made a § 506 motion for interests, costs and attorney fees, filed a proof of claim as a secured creditor and appeared in *Treadway I.* Moreover, prior to Bank's direct appearance in *Treadway I,* Bank has indirectly and perhaps vicariously participated through Trust's invocation of reconsideration of *Treadway I.*

■ We address the § 506 motion first. As noted earlier, Bank filed a § 506 motion. After our Decision in *Treadway I,* it filed a motion to withdraw its § 506 motion. No formal action has been taken on the § 506 motion. Our § 541(c)(2) determination that Debtor's interest is a spendthrift one defeats Bank's secured claim because, by definition, a spendthrift interest cannot be used as collateral. Our § 541(c)(2) determination renders Bank's § 506 motion moot. We think Bank recognized this outcome by its request to withdraw the § 506 motion. We should not determine a Debtor's cause of action "core" under circumstances where the underlying core determination has been rendered moot.[10]

The next direct participation in Debtor's Bankruptcy was Bank's filing of a secured

---

**10.** Trust did not have counsel separate from Bank prior to Trust's motion to reconsider our § 541 determination. Bank was not made a separate party to the § 541 proceeding in its capacity as a creditor. A docket entry in Adv. Pro. No. 88–00034 reveals Bank made a separate appearance through Trust's former counsel during our reconsideration of the § 541 Decision. Although it does not appear Bank took an active role during our reconsideration and later appeal to the District Court, we think their appearance binds them to the outcome of the § 541(c)(2) reconsideration as affirmed by the District Court. Our conclusion to bind Bank to an unsecured status is bolstered by Bank's conduct in their request to withdraw their § 506 motion after our § 541 determination. In the event Bank disputes our characterization of its § 506 motion as moot, they may request leave to refile their § 506 motion. We do not indicate here whether we would grant such leave. In the event Bank challenges our mootness determination, Debtor may request that we reexamine our non-core non-related determination on its cause of action.

proof of claim in Debtor's Chapter 7 case. As far as we are able to ascertain from the record, there has been no formal objection to Bank's proof of claim.

Potential issues presented by Bank's filing a proof of claim in this Chapter 7 case include: Did Bank consent to the exercise of our jurisdiction over collateral matters; may Debtor's collateral cause of action be joined with an objection to a proof of claim; or, if an objection to a proof of claim is deemed unnecessary because it is substantively moot, should we continue to exercise jurisdiction over Debtor's collateral cause of action when recovery will inure only to the Debtor personally and not his Bankruptcy Estate?

■ The filing of a proof of claim submits a claimant to our equitable powers to disallow its claim. *Gulf States Exploration Co. v. Manville Forest Products Corporation (In re Manville Forest Products Corporation)*, 896 F.2d 1384, 1389 (2d Cir. 1990) *citing Granfinanciera, S.A. v. Nordberg,* ── U.S. ──, 109 S.Ct. 2782, 2799, n. 14, 106 L.Ed.2d 26 (1989).

If an objection is made which overcomes the presumed validity of a proof of claim, 11 U.S.C. § 502(a); Bankruptcy Rules of Practice and Procedure in Bankruptcy Rule 3001(f), we must make a determination to allow or disallow the claim. That determination "clearly falls within the literal language of § 157(b)(2)(B), which provides that all proceedings involving the 'allowance or disallowance of claims against the estate' ... are core matters." *Gulf States Exploration Co. v. Manville Forest Products Corporation (In re Manville Forest Products Corporation), supra,* at 1389.

■ An objection to a proof of claim may be treated as an adversary proceeding, and as such, all affirmative defenses and counterclaims may be tried by the Court. Ordinarily, all pendent and ancillary matters are joined with the objection so that the entire adjustment or restructuring of debtor-creditor rights may be determined with finality in one forum.

For the same reasons stated for the § 506 motion supra, our § 541(c)(2) spend-

thrift determination renders moot the need for a formal objection to Bank's proof of claim as a secured creditor. At this point we see no reason to engage in a fruitless exercise of entertaining a formal objection to Bank's proof of claim when the result has already been determined. Once the potential underlying core matter has been disposed for reasons of mootness, we see no reason to treat a Chapter 7 Debtor's post-petition collateral cause of action as core. Finally, unless there is some other reason for us to continue to entertain Debtor's collateral cause of action, we see no reason for us to determine a pendant or ancillary matter for its own sake when its outcome will not affect the Bankruptcy Estate.

Finally, we come to Bank's direct appearance in *Treadway I.* The jurisdictional problem *sub judice* is different from that in *Unsecured Creditors Committee of Debtor, STN Enterprises, Inc. v. Noyes (In re STN Enterprises, Inc.), supra,* 73 B.R. 470 (Bkrtcy.D.Vt.1987) aff'd, Civ. No. 87–140, Slip Op., Billings, C.J. (D.Vt. April 22, 1988). In *STN* the filing of a non-core cause of action along with core actions, with the core aspect predominating, caused us to hold the entire proceeding core. In addition, the potential positive result of the *STN* adversary proceeding would effect the Bankruptcy estate. Here, Bank is not required to appear in this adversary proceeding. No other matters are pending that involve core or non-core matters. Unlike *STN supra,* nothing remains to be done concerning their "core" involvement.

■ Having exhausted the potential core aspects of Debtor's cause of action, we now turn to whether it may be treated as a related or non-related matter.

In *Turner v. Ermiger (In re Turner),* 724 F.2d 338, 341 (2d Cir.1983), our Circuit Court of Appeals applied a narrow scope of "related to" jurisdiction to require a showing of any "significant connection" to the debtor's bankruptcy. In *Turner,* a Chapter 11 debtor had claimed as exempt a contingent cause of action for conversion against her landlord. Afterwards, she filed a complaint against the landlord in

Bankruptcy Court. The District Court found jurisdiction to be "related to" under the then existing Emergency Resolution,[11] as within the definition of " 'those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court.' " *Id.*, 724 F.2d at 340 (quoting District Court). After noting that the debtor had already exempted the action and pursued it in her own name, the Second Circuit reversed and instructed the District Court to dismiss debtor's complaint for want of jurisdiction because:

> There is no suggestion that the proceeds would be turned over to the trustee, or accounted for to him, and the judgment below orders Ermiger [landlord] to pay damages directly to her [debtor]. Failure to recover on the claim could not increase her exemption claim under § 522(d) of the Code since her exemptions had already exhausted the estate. On these facts, there is no showing that Turner's [debtor's] action against Ermiger had any *'significant connection'* with her bankruptcy case. It therefore falls outside the scope of § 1471(b),[12] which allows the district courts to conduct civil proceedings 'related to' cases under Title 11.

*Id.*, 724 F.2d at 341 (emphasis supplied). *See, Gordon v. Shirley Duke Associates, A.P.I. (In re Shirley Duke Associates)*, 611 F.2d 15, 18 (2d Cir.1979) (under Bankruptcy Act of 1898, as amended, Bankruptcy Court has no jurisdiction to decide controversies between third parties that do not involve the debtor or his property, unless the court cannot complete its administrative duties without resolving the controversy).

The Third Circuit provides us with the popular definition of a "related to" jurisdiction that appears to be broader in scope than *Turner's* "significant connection:"

> The usual articulation of the test for determining whether a civil proceeding is related to a bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* ... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*In re Pacor, Inc. v. Higgins*, 743 F.2d 984, 994, 12 BCD 285, CCH BLR Para. 70002 (3d Cir.1984) (emphasis in original). *Accord, Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797, 802, 13 BCD 502, CCH BLR Para. 70630 (3d Cir.1985). *See, Fietz v. Great Western Savings (In re Fietz)*, 852 F.2d 455, 457, CCH BLR Para. 72420 (9th Cir.1988); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93, 17 CBC2d 743, CCH BLR Para. 71955 (5th Cir.1987) (*see* footnote 9 *supra* for *Ben Cooper's* limited acceptance of *Wood* ); *Elscint, Inc. v. First Wisconsin Financial Corp. (Matter of Xonics, Inc.)*, 813 F.2d 127, 131, n. 2, 17 CBC2d 230, CCH BLR Para. 71695 (7th Cir.1987); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.)*, 810 F.2d 782, 786, CCH BLR Para. 71616 (8th Cir.1987). *See also, A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.,)*, 788 F.2d 994, 1002 n. 11, 14 BCD 752, 15 CBC2d 235, CCH BLR 71094 (4th Cir.1986) *(dicta) cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

Under either *Turner's* narrow "significant connection" test, or *Pacor's* broad "conceivable effect" test, Debtor's post-petition action against Trust does not invoke our "related to" jurisdiction. The outcome of Debtor's lawsuit will not impact on the administration of the Bankruptcy Estate, nor does it adjust a debtor/creditor relationship. Aside from a possible determination of the Chapter 7 trustee's fees for prosecuting the § 541 proceeding, there re-

---

**11.** The Emergency Resolution adopted by order in the Northern District for the District of New York dealt with the *Marathon, supra* problems. 724 F.2d at 340. *See, In re Kaiser*, 722 F.2d 1574, 1581 (2d Cir.1983) (upholding similar rule of the Southern District for the District of New York).

**12.** 28 U.S.C. § 1471 was the forerunner of present day 28 U.S.C. § 1334.

mains nothing left for us to administer or decide on the trust issue *vis a vis* Debtor, Bank, Trust, Chapter 7 trustee and Debtor's Estate. Debtor's spendthrift Trust interest has been excepted from the Bankruptcy Estate. Bank's proof of claim as a secured creditor has been rendered moot because, *a fortiori*, it can't use Debtor's spendthrift interest as collateral. Bank's § 506 request for costs and attorney fees is moot either because it is an unsecured creditor or, because Bank had requested to withdraw its § 506 motion, and, recovery if any, inures to the Debtor personally and not his Bankruptcy Estate. Thus, we do not have the requisite "significant connection" or "conceivable effect" for "related to" jurisdiction.

Debtor's cause of action is non-core and non-related. We dismiss for lack of subject matter jurisdiction.

An appropriate order will enter.